This case has been argued in all the common law courts, and has been adjudged for the plaintiff in the Exchequer and the Common Bench. I have much reverence for these decisions, although they have been slighted by the opposite party; and I find sufficient matters in the proviso to lead me to conclude for the plaintiff. I am willing to agree to all that has been said on the other side. I agree that the law requires that on the tender of the ring, gloves, etc., there should be a general declaration of the intention with which they are tendered, for otherwise, as my brother WHITLOCK has said, it would be only a dumb show. But in this case, there is in the proviso more than a tender, viz., a special declaration is annexed to the person of Gulielm Shelly, for the proviso is that William Shelly shall tender, during his life, etc., a ring, etc., ipso Gulielmo tunc declarante
his intention to alter the use, and then it shall be void. I say that it is apparent that there is a personal declaration annexed to the person of Shelly, which is more than a general declaration. I grant that the law requires a general declaration, and that if the proviso required no more, inasmuch as it would only speak what the law says, it would not, as it has been said, operate at all. But it goes further than the law, for there is here a special declaration, as it *Page 653 
says ipso Gulielmo declarante and expressing. Englefield's case differs from this. There it is said, if Englefield, or any other tender and declare and not ipso declarante as in the present *case. There the declaration was indefinite, and he who tendered might declare. But the present case differs no more from the Duke of Norfolk's than a tongue does from a pen. There it is said, if the Duke, who was the feoffor, signs and seals; and here if the feoffor speaks his intention to alter the use; for it is said ipsodeclarante and expressing his intention. I subscribe to the objection, that if one speaks what the law says, it does not alter the point; and that if the lease be made rendering rent, with a proviso that if the rent be behind, it shall be lawful to distrain, the proviso is idle and vain. But if there was a special clause in the proviso, viz., that if the rent be behind it shall be lawful for the Chief Justice to distrain, there as the law does not say so, this is not idle. Likewise in this case there is aspecial declaration, ipso Gulielmo declarante, which is more than the law does require. This clause, therefore, is not idle, and, as it is annexed to the person of Shelly, it shall not be forfeited. I own that a personal
authority may be transferred to another in some cases, as appears by a most excellent case. 11 El., Dyer., 283. Quia qui facit per alium, per ipsumfacere videtur; also by 33 E., 3. Annuity 50. I. S. granted an annuity to a clerk, until he should prefer him to a living. I. S.'s mother preferred the clerk to a living, at the request of I. S., and it was held that the annuity was extinct, quia qui per alium, etc. Likewise in 8 Rep., Cook'scase. A copyholder may surrender by attorney in court, because the case speaks of a general custom; but it is said that if it was a special custom to surrender to the lord, out of court, this special custom could not be transferred to another. It is like this case. If the proviso had beengeneral, another might have tendered and declared the intention; but it being special (ipso Gulielmo declarante), another cannot tender. It is annexed to the person and cannot be forfeited. I conceive that these words,ipso declarante in the present tense, shall be taken for the future. It is provided that when the said money he shall tender, and shall declare, that when, etc., as in 27 H., 8, 26. If I lease land to you on condition that my wife, being a widow and wishing to have it, your estate shall cease; it is as if I had said that when my wife shall be widow she shall have it if shewill. The second point, which is much relied upon, is that there is here an election to be made by Gulielm Shelly. My brother WHITLOCK has objected to the uncertainty of the thing to be tendered, but I conceive it supports my opinion. It is uncertain whether a ring, gloves, or money will be tendered, and therefore it is in the election of Shelly. It is uncertain whether it shall be tendered to one of the feoffees, or to many, or to which of them; *thus it is proper that Shelly should choose. For who *Page 654 
may say whether he will choose to tender the ring, the gloves, or the money. Nothing can be said more properly to be annexed to one's person than his election, and it cannot be transferred. Election is thus defined in Dyer., 281. Electio est interna, libera, et spontanea separatio unius reiab alia, sine compulsione, consistens in animo et voluntate. Every word in this definition annexes it to the person, est interna, consistens in animo. My mind is not the mind of another man. Every man's mind is his own. Whatcan be more personal? He, who is not privy, cannot make an election for another. The heir cannot make an election if his father neglects it. Dyer., 281. If a man gives I. S. P. acre and W. acre to I. D., habendum, the one for life, the other in fee. I. S. can make his election, but if he be attainted, the Queen shall not. For the election is here personal and cannot be forfeited. 3 Rep. In the Marquis of Winchester's case, it is said that a writ of error cannot be forfeited; yet it is not so personal as an election. A feoffee in some cases shall have a writ of error. Dyer, 1. In the above case, if I. S. has made a feoffment of both acres, his feoffee shall not make election, because he is a stranger. But one acre shall be forfeited, and the lessor (or grantor) being privy, shall make his election to enter on which acre he pleases. My brother WHITLOCK has said, p. 27, the tender is the principal, and the declaration is the accessory. But I think the declaration is the principal, the chief, and special matter of this
case, as the tender may be made by anybody, but Shelly himself ought to make the declaration. I conclude with the authorities of the Exchequer and the Common Bench: conceiving that much reverence is due to their opinion; although a person at the bar has boldly scandalized them, saying that judgment was confessed by the King's attorney, for a good fee, on behalf of his client. I regard not this scandal: It is well known that the King's attorney (Hobart) is a learned and honest man. The Judges would not permit an attorney to confess judgment if they did not think him warranted by law in doing so. In this Court, lately, one Bridges, doubting his title in a forest, procured the attorney to sue him in a quo warranto, in order to obtain a judgment by confession; and as he only produced an old deed in the time of E., 2, and could not say much for himself, they did not permit the attorney to confess judgment, and Bridges went without the forest. With regard to the *judgment in the Common Bench — of the Judges that sat on this case, one alone is alive; it is my brother HATTON. I have talked to him, and he informs me that the judgment was according to law and the opinion of the court, for it was not passed hastily. I have examined the record and there were twelve continuances before judgment. I think, therefore, that there ought to be judgment for the plaintiff. *Page 655